BORNGESSER *v.* UNITED DAIRY WORKERS
PENSION FUND COMMITTEE.

1. JUDGMENT—SUMMARY JUDGMENT—CONTRIBUTIONS TO PENSION
   FUND—IMMATERIAL FACT ISSUES.
   Summary judgment was a proper means of disposing of class
   action brought by milk route operators against pension fund
   committee to recover contributions which had been made on
   the account of each employee by their respective employers
   before employment relation had terminated as the employees
   bought the routes and became entrepreneurs, where claimed
   factual issues as to whether plaintiffs had quit their employ-
   ment voluntarily and whether recovery by them would under-
   mine the actuarial soundness of the pension fund were not
   determinative of plaintiffs' right to recover contributions
   made before the change in status had taken place in view of
   provisions of plan relative to termination of the employee
   status (GCR 1963, 117).

2. PENSIONS—TERMINATION OF EMPLOYEE STATUS.
   Dairy company employees who terminated employee status and
   become entrepreneurs when they purchased the milk routes
   they had hitherto operated lost the right to participate in
   benefits of pension plan to which employer had contributed
   while employee status existed.

3. SAME—TERMINATION OF EMPLOYMENT—UNJUST ENRICHMENT.
   Unjust enrichment of pension plan was not effected by reason
   of termination of employment relation between plaintiffs who
   purchased milk routes they had formerly operated as em-
   ployees of dairy companies who contributed monthly sums
   for each employee, where plan provided that an individual's
   participation therein should terminate when he quit or was

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 41 Am Jur, Pleading § 340 *et seq.*
[2–5] 40 Am Jur, Pensions § 21.

discharged and was not rehired within specified time of departure.

4. SAME—PLAN—PARTICIPATION.

Employees who are beneficiaries of a pension plan to which their employers contribute may participate in the plan only to the extent provided for therein.

5. TRUSTS—DISTRIBUTION OF FUNDS.

The power of a court to grant relief when necessary to protect the carrying out of the purposes of a trust or to prevent the destruction of, or injury to, trust funds does not empower the court to terminate the trust and distribute the moneys remaining therein in a manner not consistent with the plan and purpose of the trust, where the trust plan has its own provision for distribution of its fund, a court being without power to rewrite the contracts involved.

Appeal from Wayne; Moynihan, Jr. (Joseph A.), J. Submitted April 7, 1965. (Calendar No. 8, Docket No. 50,601.) Decided June 7, 1965.

Complaint by Oliver Borngesser, for himself and others similarly situated, against United Dairy Workers Pension Fund Committee, an unincorporated voluntary association, for the amount paid into the pension fund by plaintiff's employer for plaintiff's benefit. Judgment for defendant. Plaintiff appeals. Affirmed.

*Bellinson & Doctoroff* (*Ronald D. Feldman,* of counsel), for plaintiff.

*Burger & Sullivan* (*Carl F. Burger,* of counsel) and *Rothe, Marston, Mazey, Sachs & O'Connell* (*William Mazey,* of counsel), for defendant.

DETHMERS, J. Plaintiff brought this suit for himself and 84 others similarly situated, as a class action. They had been milk route operators, employ-

ees, respectively, of several different Detroit milk distributors, and members of a dairy workers union. A collective bargaining agreement was entered into between the distributors and the union. It provided for a pension plan agreement to be financed by employer contributions of $10 per month for each employee. The pension plan was drafted, it was approved by the union and the commissioner of internal revenue and became operative. Under the plan, the pension fund was placed in control of a pension fund committee, defendant herein, which had the authority and responsibility of administering the pension program in accord with the terms of the plan. The employers made the contributions as required, for some length of time, in amounts ranging from $320 to $1,010 per covered employee included in the class here involved. Plaintiff alleges that the agreement for employer contributions to the fund was in lieu of a pay raise. The plan provided that plaintiff and all other employees similarly situated would be entitled to share in the fruits and benefits of the pension plan.

After the plan had been in operation for some time plaintiff and the others whom he here represents purchased from their employers the milk routes they had been operating and, as plaintiff says in his brief, changed from employee status to entrepreneur status. Their former employers then ceased making contributions to the pension fund in their behalf. Article 5, § 4, of the pension plan provided, *inter alia,* as follows:

"Except as provided in article 6, § 2, an individual's participation in the plan shall terminate and he shall forfeit all service credited to him in the event—

"(a) He quits or is discharged from employment with a participating company and is not rehired by

any participating company within 90 days from and after the date he quit or 180 days from and after the date he was discharged."

After plaintiff and those he represents had purchased their routes, because they then were told by defendant committee that they no longer were employees and, hence, could not become eligible for pensions or other benefits under the plan, they demanded from defendant committee payment to them of the past contributions made to the fund by their employers on their account. Upon refusal, this suit was brought to recover the amount of those contributions.

Defendant moved for summary judgment* on the ground that the action was founded upon a written document, namely, the pension plan, and that under its provisions plaintiff had no cause of action such as here asserted. The motion was supported by affidavits, incorporating a copy of the pension plan as an exhibit. The court granted the motion. In its opinion the court stated, *inter alia,* that plaintiff had terminated his employment voluntarily and that to grant plaintiff and the others the relief sought might jeopardize the actuarial soundness of the plan. The main reason assigned in its opinion, however, for granting defendant's motion was that there is no provision in the plan supporting plaintiff's claim in this case. The court quoted from the plan, article 10, § 2, the following:

"The trust fund shall be used to pay benefits as provided in the plan pursuant to authorization by the pension fund committee. No part of the principal or income of the fund shall, in any event, be used for, or diverted to, purposes other than those provided in the plan."

Plaintiff appeals from the summary judgment for defendant.

---

* See GCR 1963, 117.—REPORTER.

Plaintiff first contends that a summary judgment was improper because two statements in the court's opinion amounted to determination of questions of fact on which plaintiff was entitled to decision after trial on the facts. These two are, as above indicated, that plaintiff and the others quit their employment voluntarily and that allowing them to recover in this case would undermine the actuarial soundness of the pension fund. Whether these factual questions be disputed or not, decision thereof would not be decisive of plaintiff's right to recover. The statements of the court thereon, in its opinion, were completely immaterial and, accordingly, the fact that the answers to those questions might be in dispute did not require a trial, if, as is the case here, on the undisputed facts, the pleadings and the agreement on which suit is brought, defendant was entitled, as a matter of law, to judgment in its favor. There was, therefore, no error in disposing of the case by summary judgment.

Plaintiff says in his brief, correctly we think, that "the appellant and his compeers are no longer participating employees"; also, that their status has changed from that of employee to that of entrepreneur. We think this plainly brings into operation the above quoted language of article 5, § 4(a), of the pension plan to the effect that plaintiff's participation in the plan has terminated because he quit his employment and has not been rehired. That means that he cannot share in the pension benefits provided for in the plan. There is no provision therein for dividing up the fund or a portion thereof among employees who cease being employees. As the lower court observed, the above quoted language of article 10, § 2, of the plan prohibits use of the pension fund for the purpose here sought by plaintiff.

Plaintiff says that purchase of routes by a large number of operators and their consequent departure

from the ranks of employees was not contemplated
when the plan was adopted, and that, accordingly,
retention in the fund of the contributions made for
them would work an unjust enrichment of the fund
at their expense. While the language of the plan
evidences no contemplation of such occurrence, nei-
ther does it indicate the contrary. As far as con-
templations are concerned, article 5, § 4(a), reveals
that it was anticipated that there would be some
terminations of employee status, for whatever rea-
son, the reasons therefor being left unspecified, ap-
parently because they were considered immaterial.
As the trial court said:

"However, in the instant case a reading of the
plan does not indicate that the parties ever intended
that the plaintiff and persons in his class should
have a vested interest in the fund if they should
cease under the terms of the plan to become em-
ployees."

Enrichment of the fund strictly in accord with the
terms of the plan, and because of occurrences
(quits) referred to and covered by its language, can-
not be termed unjust enrichment.

Defendant refers to *George* v. *Haber,* 343 Mich
218. While, as the trial court noted, it is not on all
fours with this case because of differences in the
language of the respective pension plans, there is
in the opinion of this Court in that case language
pertinent here, as follows (pp 227–229):

"Appellants, under the express terms providing
for the creation of the trust fund, have no right or
interest in such fund. Rather they, like other em-
ployees of the company, were beneficiaries only to
the extent of the pension or disability benefits to
which they might become entitled.    *   *   *

"Under the factual situation presented here the
trial court properly denied the relief sought by plain-
tiffs. Equity may grant relief when necessary to

protect the carrying out of the purposes of a trust or to prevent the destruction of, or injury to, trust funds, in the event that altered circumstances create an exigency justifying intervention. Such is not the situation in the case at bar. Plaintiffs are not asking for the protection of the trust fund but, rather, seek the termination of the trust and the distribution of the moneys remaining in the fund in a manner not consistent with the plan and purpose of the parties to the agreements. Such purpose may be accomplished in the manner provided therefor. The Court may not rewrite the contracts here involved."

Affirmed. Costs to defendant.

KELLY, SOURIS, SMITH, O'HARA, and ADAMS, JJ., concurred with DETHMERS, J.

T. M. KAVANAGH, C. J., and BLACK, J., concurred in result.