BECKER v PENSION FUND, CENTRAL STATES, SOUTHEAST
AND SOUTHWEST AREAS

1. Appeal and Error—Jury—Verdict—Evidence.

A jury verdict supported by evidence presented at trial will not be disturbed on appeal.

2. Pensions—Pension Board—Arbitrariness—Fraud—Bad Faith —Courts—Discretion—Pension Plan.

It must be affirmatively shown that a pension board's determination is arbitrary, fraudulent, or in bad faith before a court's discretion may be substituted for that of the pension board under a pension plan.

3. Pension—Pension Plans—Construction of Pension Plans.

Pension plans are to be construed in favor of the employees.

4. Trial—Motions—Directed Verdict—Evidence.

In considering a motion for directed verdict, a trial court must view all the evidence and testimony adduced at trial in the light most favorable to the party against whom the motion was made.

---

References for Points in Headnotes
[1] 4 Am Jur 2d, Appeal and Error §§ 77, 736, 737.
[2] 60 Am Jur 2d, Pensions and Retirement Funds § 71.
[3] 60 Am Jur 2d, Pensions and Retirement Funds § 4.
[4] 75 Am Jur 2d, Trial § 427.
[5] 75 Am Jur 2d, Trial §§ 337, 339.
[6] 48 Am Jur 2d, Labor § 422.
[7] 4 Am Jur 2d, Appeal and Error § 891.
[8] 3 Am Jur 2d, Agency §§ 69, 72.
[9] 3 Am Jur 2d, Agency § 337.
[10, 11] 46 Am Jur 2d, Judgments §§ 708–769.
[12] 47 Am Jur 2d, Judgments § 922.

5. TRIAL—JURY—JURY QUESTION—REASONABLE MINDS.

A question is properly left for the jury's determination if reasonable minds can differ as to its resolution.

6. JURY—QUESTION OF FACT—WORKERS—SKILLED WORKERS—SUPERVISORS—MANAGEMENT.

It is a question of fact in every case as to whether an individual is merely a superior worker who exercises the control of a skilled worker over less capable employees or is a supervisor who shares the power of management.

7. APPEAL AND ERROR—TRIAL—INSTRUCTIONS TO JURY—OBJECTIONS.

Absent objection, an instruction to the jury must be plainly erroneous or reversible error has not been committed.

8. PRINCIPAL AND AGENT—INSTRUCTIONS TO JURY—RESPONSIBILITY FOR AGENT'S ACTS—SCOPE OF AGENT'S AUTHORITY.

A court may properly instruct the jury that, as a matter of law, a principal is responsible for the acts of his agent where the facts are either admitted or undisputed as to the existence of the principal-agent relationship and as to the scope of the agent's authority.

9. PRINCIPAL AND AGENT—MISTAKES—FRAUD—AUTHORITY—CHARGING PRINCIPAL.

A principal is charged with an agent's mistakes and if it be not a case of mistake but fraud on the part of the agent, committed in the course of his employment, the principal is charged even though the principal was ignorant thereof and the agent, in so doing, exceeded his authority or acted in violation of his principal's instructions.

10. COURT RULES—JUDGMENT—SETTING ASIDE JUDGMENT—MODIFYING JUDGMENT.

The court rule covering relief from judgment or order is intended to accord a party a remedy if certain grounds for setting aside or modifying a judgment arose after 20 days from entry of the judgment (GCR 1963, 527.2, 527.5, 528.3).

11. COURT RULES—MOTIONS—JUDGMENT—ALTERING OR AMENDING JUDGMENT—VERDICT.

The 20-day limitation on motions to alter or amend a judgment

will operate as an absolute bar only in those cases where the basis for the relief sought should have been known to the party at the time the judgment was entered, *i.e.,* when relief is sought on grounds that the verdict is excessive, inadequate, against the great weight of the evidence, or on the basis of some procedural irregularity, misconduct, or erroneous ruling in the course of the proceeding (GCR 1963, 527.5).

12. Court Rules—Motions—Relief from Judgment—New Trial.

A motion for relief from judgment may not be permitted as a substitute for a motion for new trial or a motion to alter or amend a judgment where circumstances constituting mistake, inadvertence, surprise, or excusable neglect would have been available in time to support a motion for new trial (GCR 1963, 527.2, 527.5, 528.3).

Appeal from Wayne, Benjamin D. Burdick, J. Submitted Division 1 February 5, 1975, at Detroit. (Docket Nos. 16848, 18908.) Decided March 24, 1975. Leave to appeal applied for.

Complaint by Frank Becker against Pension Fund, Central States, Southeast and Southwest Areas, for pension benefits. Judgment for plaintiff. Defendant appeals. Plaintiff's motion in Court of Appeals for leave to file a motion to amend judgment in circuit court granted. Plaintiff's motion in circuit court denied. Plaintiff appeals from denial of that motion. Affirmed.

*Foster, Meadows & Ballard,* for plaintiff.

*Hoffa, Chodak & Robiner* (by *Gerald E. Title)* and *Goldberg, Previant & Uelmen* (by *Alan M. Levy),* for defendant.

Before: McGregor, P. J., and J. H. Gillis and Quinn, JJ.

McGregor, P. J. Plaintiff applied for, but was

denied, pension benefits from defendant. Defend-
ant denied plaintiff's eligibility for the benefits for
the reason that he had not been employed for the
requisite 20 years. The matter proceeded to trial
and a jury returned a verdict in favor of the
plaintiff. Judgment, inclusive of "statutory inter-
est", MCLA 600.6013; MSA 27A.6013, was entered
on March 23, 1973. Defendant appealed this deci-
sion to this Court. Plaintiff filed with this Court a
motion for leave to file a motion to amend the
circuit court judgment to add pre-complaint inter-
est, which motion was granted. The circuit court,
however, denied plaintiff's motion, and plaintiff
appeals.

The paramount issue on appeal, as well as at
trial, is whether plaintiff was an employee, as
defined by the Teamsters Union Pension Fund, for
the requisite 20 years, as determined by the jury.

The following is a chronological breakdown of
plaintiff's employment career:

(1) 1908–1914—            employed aboard various
                          vessels on the Great Lakes,
                          as buoy tender and porter,
                          among other claissifica-
                          tions.

(2) 1914 (6 months)—      at Tower Creamery, deliv-
                          ering by wagon, bulk milk.

(3) 1914–1923—            employed at different jobs
                          in various factories.

(4) 1923–1947—            employed in the Sanitation
                          Department for the City of
                          Detroit. Duties included the
                          "handling of garbage", clas-
                          sified as a foreman, al-
                          though he had no authority
                          in hiring or firing of em-

|                 |                                                                                                                                                          |
| --------------- | -------------------------------------------------------------------------------------------------------------------------------------------------------- |
|                 | ployees or control of the hours the employees worked. Defendant admits "all I did was supervise".                                                        |
| (5) 1947–1967—  | operated a tugboat business, the Frank Becker Towing Company, which was incorporated in 1955, at which time he joined the Teamsters' Union.                |

Dave Johnson, secretary-treasurer of Teamster Local 299, negotiated the pension plan into plaintiff's first Teamster contract. Although plaintiff indicated that he thought he was too old to retire and receive benefits from the plan, Johnson allegedly told him:

"Frank, you've been in transportation all your life. You are past 57 or 67. I believe you can go out in the Teamsters Union."

Pension payments were made directly to the Local's office by the company's bookkeeper, plaintiff's wife. Plaintiff never drew a salary, before or after the incorporation of his towing company.

Upon reaching retirement age, plaintiff applied for pension benefits to the Plan's Trustees, giving his employment as a tugboat captain from 1946 until 1967. Federal Social Security records show no reported wages until 1956. The Trustees accorded plaintiff only 11-1/2 years' credit toward the requisite 20 years for pension benefits. The basis of such credit were only those years of employment subsequent to plaintiff's incorporation of his company.

The first issue raised for our consideration is

whether there is any evidence to support the jury's verdict that defendant's denial of pension benefits to the plaintiff was arbitrary or capricious.

This Court has held that, if the jury's verdict is supported by evidence presented at trial, *i.e.,* if it was within the range of the proofs, the same will not be disturbed on appeal. *Jamison v Lloyd,* 51 Mich App 570, 577; 215 NW2d 763 (1974). The trial judge related the defendant's theory of the case to the jury in his instructions, stating that, if the Trustees' decision was not arbitrary, capricious or fraudulent at the time of their decision, their denial of benefits to the plaintiff must be sustained.

When dealing with such a conflict, the arbitrary or capricious standard is implemented. See *Zdero v Briggs Manufacturing Co,* 338 Mich 549; 61 NW2d 615 (1953). *Tobin v General Motors Corp,* 17 Mich App 475; 169 NW2d 644 (1969). It has been held that the express terms of the Pension Trust may not be rewritten by the courts. *Borngesser v United Dairy Workers Pension Fund Committee,* 375 Mich 697, 703; 135 NW2d 381 (1965), *Green v Copco Steel & Engineering Co,* 22 Mich App 16, 18; 176 NW2d 690 (1970).

According to foreign authority, defendant's theory is correct. It has been held that, before the court's discretion may be substituted for that of the Pension Board under the plan, it must be affirmatively shown that the Board's determination is arbitrary, fraudulent, or in bad faith. *Matthews v Swift & Company,* 465 F2d 814, 820 (CA 5, 1972), *Gitelson v DuPont,* et al., 17 NY2d 46; 268 NYS2d 11; 215 NE2d 336 (1966), *Food Fair Stores, Inc v Greeley,* 264 Md 105; 285 A2d 632 (1972). Moreover, pension plans are to be construed in favor of the employees. *Frietzsche v First Western*

*Bank & Trust Co,* 168 Cal App 2d 705; 336 P2d 589 (1959).

Defendant's pension requirements are that the employee must work for 20 years in a traditional teamster employment industry, to become eligible for pension benefits. Prior to the effective date of coverage of the Pension Plan, the employee is accorded credit for "[e]mployment in the *same classification* of work in which employed after the effective date under a Teamster contract" and for "employment requiring the *usual* Teamster skills in *traditional* Teamster industries at the time of such employment". (Emphasis added.)

The Administrator of the Pension Benefit Department conceded that "if he [the plaintiff] was a driver for the City of Detroit Garbage Department * * * we would have given him credit because that is a usual Teamster industry". Defendant's counsel agreed that from 1908 to 1918, plaintiff is entitled to credit, because it makes no difference whether the employee entering the Pension Plan is "a sailor or * * * tugboat captain or whatever, he gets all that credit". As to plaintiff's employment with the City of Detroit, it was the Administrator's position that the type of work performed by the plaintiff was not within the classification found in a Teamster contract. He did agree, however, that a "driver" is within such classification; also inclusive are those employees who "drove a team of horses and * * * milk wagons".

It appears to this Court that the evidence is supportive of the jury's conclusion that the Trustees' action was arbitrary or capricious, in that (1) the Trustees arbitrarily accorded the plaintiff credit for 11-1/2 years after his company became incorporated, while denying him credit prior to the incorporation, notwithstanding the plaintiff's fail-

ure to draw a salary after his incorporation, and (2) the Trustees arbitrarily denied any credit for the plaintiff's employment on the various vessels on the Great Lakes from 1908 through 1914.

This Court now comes to the question of the validity of the trial court's denial of the defendant's motion for a directed verdict. In considering a motion for directed verdict, a trial court "must view all the evidence and testimony adduced at trial in the light most favorable * * * to * * * the party against whom * * * made". *Kupkowski v Avis Ford, Inc,* 51 Mich App 668, 670; 215 NW2d 767 (1974). If reasonable minds can differ on the particular question involved, the same was properly left for the jury's determination. *Price v Manistique Area Public Schools,* 54 Mich App 127, 135; 220 NW2d 325 (1974), *Kupkowski v Avis Ford, Inc, supra.*

It is difficult for this Court to determine how the defendant admittedly treated the plaintiff as an employee in the operation of the Frank Becker Towing Company, subsequent to the incorporation of this company, while at the same time it claimed that prior to the incorporation, he was self-employed. This inconsistency is further compounded by the fact that plaintiff never once was paid a salary, either before or after incorporation. At the time the Trustees denied plaintiff's claim for pension payments, the "totality of the file". *i.e.,* defendant's exhibits L through AA in other documents, such as Social Security records, was before them. It is manifestly and totally illogical that the legal act of incorporation, coupled with plaintiff's failure to draw a salary, transforms plaintiff's status from an employer to an employee.

The trial court's jury instruction defining a supervisor is similar to that found in the Taft-Hartley Act:

"I charge you that the definition of a supervisor is any individual having authority in the interest of the employer to hire, transfer, suspend, lay-off, recall, promote, discharge, assign, reward or discipline other employees, or responsibility to direct them or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment. Now that is the definition of a supervisor."

Although it appears that the plaintiff may in fact be a supervisor, that question was properly one for the jury.

"In the final analysis it is a question of fact in every case as to whether the individual is merely a superior worker who exercises the control of a skilled worker over less capable employees, or is a supervisor who shares the power of management." *Mossberg v Standard Oil of New Jersey,* 98 NJ Super 393, 404; 237 A2d 508 (1967).

The question of whether plaintiff is a supervisor is a question of fact properly left for the jury and is closely analogous to the situation where an agency issue is before the court. In the latter instance, even though the testimony is undisputed, the question is whether those facts establish the relationship and is therefore left for the jury's determination. See *Head v Benjamin Rich Realty Co,* 55 Mich App 348, 357; 222 NW2d 237 (1974).

Next for our consideration is whether the jury instruction pertaining to the existence of an agency relationship between Dave Johnson (secretary-treasurer of Teamster Local 299) and the defendant is plainly erroneous.

Pursuant to the plaintiff's agency theory, the trial judge rendered the following instruction:

"If you believe that Dave Johnson, having the right to speak for the defendant, told Frank Becker he should join the Plan and would be covered, the defendant is estopped to deny Frank Becker's eligibility for pension at this time."

Absent objection, reversible error has not been committed unless the instruction is plainly erroneous.

It is clear from the parties' discussion with the trial judge concerning the above charge, that it was intended that the jury determine whether Dave Johnson had actual authority to speak for the defendant. If Johnson was accorded such authority, the fact that he was unauthorized to speak as to any interpretation of the Pension Plan is irrelevant, since, given the general authority to speak, the principal is bound.

"Where the facts are either admitted or undisputed *as to the existence of the principal agent's relationship and as to the scope of the agent's authority,* the lower court may properly instruct the jury that the principal, as a matter of law, is responsible for the acts of the agent." *Renda v International Union, U.A.W.,* 366 Mich 58, 94; 114 NW2d 343 (1962). (Emphasis added.)

There is no question that local union representatives, such as Dave Johnson, are defendant's agents for various purposes, to collect delinquent pension payments from employees, bargain with the employer as to whether the union contract will include the defendant's pension plan although the Trustees determine whether to approve the same, give copies of the Pension Plan to members of the Union, inform them of the prerequisites for the disbursement of retirement benefits, and to assist the Trustees in gathering information relating to the employees seeking such benefits. However, the

local unions were specifically informed that only the Trustees were to interpret the Pension Plan.

Pursuant to *Bleam v Sterling Insurance Co,* 360 Mich 208, 213; 103 NW2d 466 (1960), defendant's directive instructing the local union that only the Trustees could interpret the Pension Plan, is inoperative against the third party, *i.e.,* Dave Johnson's mistaken interpretation is charged against the defendant, regardless of Johnson's authority.

"Their mistakes are the mistakes of the corporation * * * If it be not a case of mistake but fraud on the part of the agent committed in the course of his employment, defendant, as his principal, is chargeable therewith, *even though* the principal was ignorant thereof and *the agent, in so doing, exceeded his authority or acted in violation of his principal's instructions."* *Bleam, supra,* p 213. (Emphasis added.)

The last question posed for this Court's consideration is whether GCR 1963, 528.3(1) empowers the trial court to amend judgment notwithstanding the running of the 20-day limitation found in GCR 1963, 527.5.

The rule, GCR 1963, 528.3, is intended to accord a party a remedy if the particular ground for setting aside or modifying the judgment arose *subsequent* to the expiration of the 20-day period, provided for in GCR 1963, 527.5. The formal rule itself provides that a judgment may not be set aside for newly discovered evidence unless, by due diligence, such evidence "could not have been discovered in time to move for a new trial under sub-rule 527.2". This seems to be the only reasonable interpretation in reading the two rules:

"Since the provisions of sub-rule 528.3 are adequate

to give relief for any reason that legitimately develops after the 20 day period, the 20 day limitation will operate as an absolute bar only in those cases where the basis for the relief sought should have been known to the party at the time the judgment was entered— that is, when relief is sought on grounds that the verdict is excessive, inadequate, or against the great weight of the evidence, or on the basis of some procedural irregularity, misconduct, or erroneous ruling in the course of the proceedings." 3 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 120.

"However, the motion for relief from judgment under sub-rule 528.3 should not be permitted as a substitute for the motion for a new trial under Rule 527 when the circumstances constituting mistake, inadvertence, surprise, or excusable neglect would have been available in time to support a motion for a new trial. In other words, one cannot urge his failure to move for a new trial as inadvertence or neglect justifying relief under sub-rule 528.3(1). To get relief under the latter provision, he must show circumstances justifying or excusing his failure to make a timely motion for a new trial as well as showing grounds which would have entitled him to relief if such motion had been made." at pp 182, 183.

Prior to the trial judge's charge to the jury, plaintiff was aware of his right to an "interest on damages" instruction. Hence, the subsequent agreement between the parties and the breach thereof seems to be irrelevant insofar as plaintiff failed to file with this Court a motion for leave to file a motion to amend circuit court judgment within the 20-day period. Such motion was filed on June 27, 1973, three months subsequent to entry of judgment. The motion was necessary, since this Court had already been vested with jurisdiction. GCR 1963, 802.1, 802.2.

Judgment affirmed.