## TWEDDLE v TWEDDLE LITHO COMPANY

OPINION OF THE COURT

1. LABOR RELATIONS—PROFIT SHARING PLANS—RESTRAINT OF TRADE—FORFEITURE OF BENEFITS.

A profit sharing plan which requires benefits to be forfeited when an employee engages in activities which compete with the employer is not per se illegal or void, even where the limitation is unrestricted in time and area.

2. COURTS—LABOR RELATIONS—PROFIT SHARING PLANS—DETERMINATION OF RIGHTS—VIOLATION OF PROVISIONS.

A trial court has the authority to review and to construe a profit sharing plan which is the subject of a lawsuit despite a provision in the plan that decisions of an administrative committee shall be final where the court discovers that a determination of rights under the plan was made by the committee in violation of a provision requiring that the committee act in good faith.

3. LABOR RELATIONS—PENSION AND RETIREMENT PLANS—LIBERAL CONSTRUCTION—DUAL CONSTRUCTION.

Private pension and retirement plans generally are liberally construed in favor of the employee, but where two constructions of a pension plan are possible, one of which requires a finding of fraudulent intent and the other of which permits a conclusion of good faith on the part of the employer, the courts will not hesitate to adopt the latter interpretation.

4. LABOR RELATIONS—PENSION AND RETIREMENT PLANS—CONTRACTS—RIGHTS OF PARTIES—TERMS OF CONTRACT—AMBIGUITIES.

The rights and obligations of the parties to a private pension and retirement plan where the plan creates a contractual obligation

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 6] Rights and liabilities as between employer and employee with respect to general bonus or profit-sharing plan. 81 ALR2d 1066.

[3] 17 Am Jur 2d, Contracts § 242, 256–259.

[4] 17 Am Jur 2d, Contracts §§ 75, 76, 242, 256–258.

[5] 22 Am Jur 2d, Damages § 245.

[7] 5 Am Jur 2d, Appeal and Error § 820 et seq.

must be measured by the terms of the contract under the ordinary rules of construction; any ambiguity in a contract is construed most strongly against the drafter.

5. DAMAGES—CONTRACTS—BREACH OF CONTRACT—RECKLESS ACTION.
   Punitive damages are not ordinarily recoverable for breach of contract; in those contract cases where punitive damages have been allowed there has been a showing that the defendant acted recklessly, negligently, or maliciously.

DISSENT BY BRONSON, J.

6. LABOR RELATIONS—PROFIT SHARING PLANS—FORFEITURE PROVISIONS—VIABLE PRECEDENTS—UNLIMITED FORFEITURE—VALIDITY.
   *It is questionable whether a viable Supreme Court precedent exists for the proposition that under a profit sharing plan any unlimited forfeiture provisions for engaging in competition with the employer are not void as unreasonable under common law.*

7. APPEAL AND ERROR—DISPUTED QUESTIONS—FACTUAL CONCLUSIONS—DECISION ON APPEAL.
   *It is not the function of an appellate court to decide disputed questions of fact in the first instance and then choose between affirmance or reversal by testing its factual conclusion against that which it believes the trial court might have or must have reached to issue the judgment it did.*

Appeal from Macomb, Hunter D. Stair, J. Submitted June 8, 1977, at Detroit. (Docket No. 28703.) Decided January 4, 1978.

Complaint by Robert E. Tweddle against Tweddle Litho Company and Margaret A. Tweddle, Michael Tweddle and Edward Matson, as trustees of the Tweddle Litho Company Profit Sharing Plan, seeking to compel the payment of funds allegedly due under the plan. Judgment for plaintiff. Defendants appeal. Affirmed in part and remanded for modification of judgment.

*Robert L. Coburn,* for plaintiff.

*Kerr, Wattles & Russell* (by *Richard D. Weber* and *Patrick McLain*), for defendants.

Before: J. H. GILLIS, P. J., and BRONSON and R. E. ROBINSON,* JJ.

J. H. GILLIS, P. J. Plaintiff, a former employee of defendant company, brought an action to compel the payment of funds allegedly due him under a profit sharing plan.[1] The administrative committee of the profit sharing plan decided that plaintiff had forfeited his benefits under a provision of the profit sharing plan as plaintiff had, after resigning from defendant company, gone to work for a competitor.[2] The relevant provision states:

" * * * [A]nd provided further that upon severance of employment for the conviction of a criminal act, for fraud, stealing, unlawful conversion and use of company assets, *or if a participant engages, directly or indirectly in the production, manufacture, distribution, or sales of any products or services, similar to or competitive with, those manufactured or sold by the company,* either for his own benefit or for the benefit of any other person, firm, or corporation whatsoever, or if a participant disseminates or conveys, in any manner or form, information of a confidential nature, which information if disseminated or conveyed becomes detrimental to the best interests of the company, *then that participant shall forfeit all credits to his account, made by the employer and earnings and adjustments thereon.*" (Emphasis supplied.)

The trial court, sitting as a trier of fact, interpreted this provision to apply only to competitive activities engaged in while employed by defendant.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Plaintiff claimed and was awarded $31,687.48.

[2] Plaintiff did not deny that he engaged in competitive activity after termination of his employment with defendant.

The trial court therefore held that the administrative committee had improperly forfeited plaintiff's benefits under the profit sharing plan. As "exemplary" damages, the trial court ordered plaintiff's benefits to be paid in a lump sum, rather than over a 15-year period as provided in the profit sharing plan. Defendant appeals as of right, claiming that the trial court erred in interpreting the forfeiture provision of the plan, because another clause of the plan makes interpretations of the language of the plan by the administrative committee binding absent bad faith. Defendant also claims that the court erred in awarding a lump sum distribution as punitive damages.

I.

We must first consider the validity of a provision in a profit sharing plan under which benefits are forfeited when an employee engages in competitive activities.

Despite a statute outlawing as against public policy "all agreements and contracts by which any person * * * promises or agrees not to engage in any * * * trade, profession, or business * * * ",[3] two Michigan cases have held that forfeiture of benefits provisions in pension or profit sharing plans are not per se illegal or void.

In *Couch v Administrative Committee of the Difco Laboratories Inc Salaried Employees Profit Sharing Trust,* 44 Mich App 44; 205 NW2d 24 (1972), this Court[4] held that a forfeiture provision in a profit sharing plan was not within the statu-

---

[3] MCLA 445.761; MSA 28.61.

[4] Judge, now Justice, LEVIN authored the opinion of the Court in *Couch v Administrative Committee of the Difco Laboratories Inc Salaried Employees Profit Sharing Trust,* 44 Mich App 44; 205 NW2d 24 (1972).

tory prohibition on contracts not to compete, reasoning that such a forfeiture provision merely *restrains* an employee from engaging in competitive employment while the statute bars agreements which *prevent* competitive activities.[5]

The Court in *Couch,* however, did not hold that all forfeiture provisions were valid; it did not have before it the question of whether unlimited restraints were valid absent an applicable statute:

"It has been suggested by some commentators that the touchstone for determining the validity of agreements of this kind, absent a legislative solution, is the reasonableness of the restraint; that the courts should not enforce an unreasonable condition. Couch has not contended that this noncompetition clause should be denied enforcement because it constitutes an unreasonable or unconscionable restraint."[6] *Couch, supra,* at 49–50.

In *Woodward v Cadillac Overall Supply Co,* 396 Mich 379; 240 NW2d 710 (1976), the Supreme Court reaffirmed *Couch.* The Court held that a noncompetitive forfeiture provision was not an illegal contract not to compete under MCLA 445.761; MSA 28.61. The majority went even farther than *Couch,* however, holding that any restriction on unlimited forfeiture provisions was for the Legislature to decide, not the courts.

Based on *Woodward, supra,* we hold that the noncompetition forfeiture provision in the instant case is valid despite being unrestricted in time and area.

---

[5] *See, also, Bannert v American Can Co,* 525 F2d 104 (CA 6, 1975) (following Michigan law).

[6] The forfeiture provision at issue in *Couch* restrained competitive activities for only one year.

## II.

Defendants contend that the administrative committee's interpretation of the terms of the plan is final, absent bad faith and that the trial court erred in construing the terms of the noncompetition forfeiture provision.

The relevant portion of the profit sharing plan provides:

"The Committee shall have the power and duties specified in this instrument and, not in limitation, but in amplification of the foregoing, shall have power *to construe the Plan, to determine all questions arising thereunder,* including, particularly, questions submitted by the Trustee on all matters necessary for proper discharge of its duties, powers and obligations, and to establish policies with respect to the status of Participants under the Plan. *The decisions of the Committee made in good faith upon matters within the scope of its authority shall be final,* but the Committee shall at all times act uniformly and without discrimination and shall from time to time set forth rules of interpretation and administration, subject to modification as appropriate in the light of experience." (Emphasis supplied.)

A review of the record reveals that the committee was not acting in good faith when it interpreted the profit sharing plan.

The evidence presented at trial reveals: 1) strained relations between plaintiff and the chief operating officer of the company (also a committee member); 2) a recent reduction of almost 50% in plaintiff's salary; and 3) an ambiguous profit sharing plan.

Under these circumstances the trial judge could have, and should have found bad faith.

Having determined that the committee was acting in bad faith, there is no question that the trial

court possessed the authority to review and construe the plan.

In 60 Am Jur 2d, Pensions and Retirement Funds, § 75, p 952, the following is stated:

"Private pension and retirement plans are liberally construed in favor of the employee, it being the general rule that pension plans formulated by an employer are to be construed most strongly against the employer, although there is some intimation that this rule does not apply to a gratuitous, noncontractual plan. However, where two constructions of a pension plan are possible, one of which requires a finding of fraudulent intent and the other of which permits a conclusion of good faith on the part of the employer, the courts will not hesitate to adopt the latter interpretation. And even where the plan creates a contractual obligation, the rights and obligations of the parties must be measured by the terms of the contract under the ordinary rules of construction."

The trial court analyzed the agreement and found that the competitive activity must occur while the participant is employed in order to bring into play the forfeiture provision. An examination of the language of the provision reveals that it is capable of two interpretations, and is therefore ambiguous. Any ambiguity in a contract is construed most strongly against the drafter. *Stark v Kent Products, Inc,* 62 Mich App 546; 233 NW2d 643 (1975), *lv den,* 395 Mich 779 (1975). Also, pension plans are to be construed in favor of the employee. *Becker v Pension Fund, Central States, Southeast and Southwest Areas,* 59 Mich App 684; 229 NW2d 888 (1975), *lv den,* 395 Mich 795 (1975).

An application of these well-settled rules of construction to the instant matter affirms the trial court's interpretation of the plan.

### III.

Defendants also contend that the trial court erred in awarding a lump sum distribution as "exemplary" damages. The rule as to punitive or exemplary damages in contract actions is stated in *Isagholian v Carnegie Institute of Detroit, Inc,* 51 Mich App 220, 222; 214 NW2d 864 (1974):

"Punitive damages are not ordinarily recoverable for breach of contract. 5 Corbin on Contracts, § 1077, pp 437–446; 11 Williston on Contracts (3d ed), § 1358, pp 301–306; 1 Restatement Contracts, § 342, p 561. In those contract cases where punitive damages have been allowed there has been a showing that 'the defendant acted recklessly, negligently, or maliciously'. *Harbaugh v Citizens Telephone Co,* 190 Mich 421, 428; 157 NW 32, 34 (1916)."

Hence, the judgment must be modified to provide that plaintiff be paid in conformity with the terms of the profit sharing plan.

Affirmed and remanded for entry of an order not inconsistent with this opinion. Costs to appellee.

R. E. ROBINSON, J., concurred.

BRONSON, J. *(dissenting).* I respectfully dissent from two aspects of the majority opinion.

First, while I agree that under *Woodward v Cadillac Overall Supply Co,* 396 Mich 379; 240 NW2d 710 (1976), the forfeiture provision at issue is not illegal, I have some doubts as to whether the opinion of the Court in *Woodward* remains viable

today. In *Woodward,* a 3–2 decision,[1] the Supreme Court held that noncompetitive forfeiture provisions such as the one at issue in the case at bar did not violate the statutory prohibition on covenants not to compete, MCLA 445.761; MSA 28.61. I do not disagree with this holding. However, the majority in *Woodward* also held that noncompetitive forfeiture provisions did not violate any common-law doctrine, citing *Couch v Administrative Committee of the Difco Laboratories Inc Salaried Employees Profit Sharing Trust,* 44 Mich App 44; 205 NW2d 24 (1972). The reference to *Couch* was questionable for that holding; the Court in *Couch* expressly stated that the issue of a common-law restraint on forfeiture provisions was not before it:

"It has been suggested by some commentators that the touchstone for determining the validity of agreements of this kind, absent a legislative solution, is the reasonableness of the restraint; that the courts should not enforce an unreasonable condition. Couch has not contended that this noncompetition clause should be denied enforcement because it constitutes an unreasonable or unconscionable restraint." 44 Mich App at 49–50.

Furthermore, the majority in *Woodward* did not discuss substantial authority holding that unlimited forfeiture provisions are void as unreasonable under common law. See, *e.g., Woodward v Cadillac Overall Supply Co, supra* (Williams, J., dissenting), Alterman, *Trade Regulation in Michigan: Covenants Not to Compete,* 23 Wayne L Rev 275 (1977), Note, *Forfeiture of Pension Benefits for Violation of Covenants Not to Compete,* 61 NW L

---

[1] The majority opinion was authored by Justice Lindemer and joined by Justices Coleman and Fitzgerald. Justice Williams' dissent was joined by Chief Justice Kavanagh. Thus, present members of the Court split 2–2 on this issue.

Rev 290 (1966). See, also, *Van Hosen v Bankers Trust Co,* 200 NW2d 504 (Iowa, 1972), *Food Fair Stores, Inc v Greeley,* 264 Md 105; 285 A2d 632 (1972), *Almers v South Carolina National Bank of Charleston,* 265 SC 48; 217 SE2d 135 (1975). I would urge the Supreme Court to reexamine *Woodward.* The case at bar certainly affords an opportunity to do so.

Second, my reading of the record in this case indicates that the trial court made no finding of fact as to the bad faith of the administrative committee. Rather, the trial court based its decision solely on its own interpretation of the profit sharing plan. It is not the function of this Court to act as a fact finding tribunal in this type of case.

"It is not the function of an appellate court to decide disputed questions of fact in the first instance and then choose between affirmance or reversal by testing its factual conclusion against that which the trial court *might* have or, if the trial judge's reasoning at the time of the judgment were identical with that of the appellate court at the time of review, *must* have reached for it to issue the judgment it did." *Nicpon v Nicpon,* 9 Mich App 373, 378; 157 NW2d 464 (1968) (emphasis in original).

See *McCarty v Mercury Metalcraft Co,* 372 Mich 567; 127 NW2d 340 (1964); GCR 1963, 517.1. I cannot concur in the majority's independent finding of bad faith; I would remand to the trial court for findings of fact on whether the administrative committee acted in bad faith. See *McCarty v Mercury Metal Co, supra,* at 577.