**322 A.2d 43.**

EDWIN O. BLINKHORN *et al. vs.*
WILLIAM J. McCARTHY *et al.*

JULY 19, 1974.

PRESENT: Paolino, Joslin, Kelleher and Doris, JJ.

466

PAOLINO, J. On January 26, 1972, plaintiffs filed this civil action to compel the defendant trustees of the New England Teamsters and Trucking Industry Pension Fund to process their applications for pension fund benefits or in lieu thereof to hold defendant Local 251 of the Teamsters Union responsible for requiring the plaintiffs to pay money into the pension fund and leading them to believe they would be eligible for pension fund benefits upon retirement. The matter was heard before a justice of the Superior Court sitting without a jury. After the plaintiffs completed the presentation of their evidence, the defendants, pursuant to Super. R. Civ. P. 41(b)(2), moved for a dismissal of the plaintiffs' action on the ground that upon the facts and the law the plaintiffs had shown no right to relief. After hearing arguments of counsel, the trial justice determined the facts, made findings as provided in Rule 52(a), and entered an order granting the defendants' motion to dismiss and dismissing the plaintiffs' complaint with prejudice. The case is here on the plaintiffs' appeal.

The question presented is whether plaintiffs are entitled to pension benefits under the terms of the collective bargaining agreements between their employer and Local 251.

The facts, as presented by plaintiffs, are as follows. Edward C. Blinkhorn, one of the plaintiffs, had for many years been the owner of an unincorporated trucking business known as B. & B. Transportation Company. He had been a member of Local 251 since 1943 and had driven trucks continuously since that time. He testified that one had to be a union member to drive. In 1961 his business was incorporated under the name of B. & B. Transportation, Inc., hereinafter referred to as "B & B." He became president and served as an officer continuously until August 1972. Thereafter he continued to be a stockholder of the company.

B & B has had a contract with Local 251 since 1961 when it was incorporated, and prior thereto there had been a contract between Edward C's unincorporated company and the union. These contracts required B & B to make pension contributions for its employees. These contributions started in 1961 when a business agent of Local 251 approached Edward C. and told him the company's trucks would not roll until appropriate arrangements were made for the corporation to make contributions to the pension fund. Satisfactory arrangements were made, resulting in retroactive payments to 1958. From 1961 on, contributions were made to the pension fund on behalf of B & B's employees, but none were made for Edward C. until 1964 when his brother, Edwin O. Blinkhorn, the other plaintiff, came to work for the company. When Edwin O. came to work for the company in 1964, it was discovered that payments were not being made for Edward C. and they were then commenced. Edward C. testified that his accountant had begun the payments to the pension fund in his and his brother's behalf; that his pay

was a rough approximation of the hours he worked; and that his duties included the loading of trucks, pulling them away from the platforms, and taking them to the garage.

Edwin O. Blinkhorn's testimony is in substance as follows. He had been driving a truck since 1928 and operated his business in his own name until 1961 when he incorporated. He continued the business until 1964 when he went out of business and went to work for his brother's firm. After one year he became treasurer and a shareholder. His primary duty was to drive a truck. He had been a member of Local 251 since 1942 and applied for a pension in 1971. He performed no duties as treasurer. He ceased being treasurer as of August 1972, but continued as a shareholder.

It is undisputed that plaintiffs continue as members in good standing in Local 251 and pay dues, vote and attend meetings.

The plaintiffs called Margurita McCaffrey as a witness. She had been the fund manager of the New England Teamsters and Trucking Industry Pension Fund since 1960. Her testimony is substantially as follows. B & B first made pension contributions for its employees in January 1964. Payments had been made by the Edwin O. Blinkhorn Co. for the period between August 1959 and April 1964. Contributions were first made to the fund for plaintiffs in August 1964. Forms requesting applications for pensions for plaintiffs were received at the pension fund office in December 1971 and January 1972. Contributions for plaintiffs were received between 1964 through 1971. The amount received for Edward C. was $3,362 and for Edwin O. $3,488.

Miss McCaffrey further testified as follows. To determine if one was eligible for a pension, social security records were normally researched back to the time the employee first drove a truck. This was not done here because the facts indicated that plaintiffs were officers of the cor-

poration. In August 1967 the pension fund office made an audit of B & B's payroll records. The audit report, dated August 2, 1967, contains a recommendation that Local 251 determine the eligibility of plaintiffs for pension fund benefits in accordance with their job classifications. A copy of the audit report was sent to B & B indicating that there was a question about plaintiffs' eligibility. Thereafter B & B's accountant sent a letter to the pension fund office, addressed to the fund manager. It states, in part, that the matter of plaintiffs' eligibility had been taken up with the union officers and that it was decided that compensation paid to plaintiffs must be reported. The letter also explains plaintiffs' duties. No reply to this letter was ever received. The pension fund office received no correspondence from Local 251 concerning plaintiffs' eligibility and it continued to accept pension fund payments on their behalf until plaintiffs attempted to process their applications for pension benefits.

Miss McCaffrey further testified that she did not remember receiving a letter from plaintiffs' accountant discussing their eligibility; that the board of trustees never saw plaintiffs' requests for applications because she viewed them as clearly ineligible; that she was sure she reported to the board that two union members had requested pensions; that they were owners and officers; that their requests had been refused; that a refund had been tendered and refused; and that the board instructed its attorney to advise plaintiffs that owners cannot collect pensions.

B & B's accountant testified that pension payments had been made for plaintiffs since 1964; that he had sent a letter concerning plaintiffs to the pension fund after the audit, but never got an answer; and that in 1964 when Edwin O. was added to the pension lists, Edward C. was also put on the pension rolls. His letter to the pension

fund was admitted into evidence to prove notice to the pension fund.

Numerous documents are in evidence. These include collective bargaining agreements between the union and B & B, the Agreement and Declaration of Trust between the pension fund and the employer, pension plans, and several other exhibits.

In his decision the trial justice noted that the facts presented by plaintiffs were not in serious dispute. It appears that he accepted the facts as presented by plaintiffs. He found that Edward C. served as an officer of the company from 1961 until August of 1972, at which time he ceased to be an officer, though he still continued as a stockholder; that Edwin O. went to work for B & B in 1964 and later became the treasurer of the company; that plaintiffs had operated or driven trucks since 1942 or 1943 and continued to drive for B & B on at least a limited basis; that they may not have worked a full forty-hour week, but the contributions on their behalf to the pension fund had been made on the basis of a forty-hour week; that Edwin O. not only drove but did maintenance work as well; that Edward C. drove as well as having been president of the company; that in 1961 the union's business agent told B & B that it had to make payments to the pension fund for its employees; and that beginning in 1964, plaintiffs were included in the monthly remittance forms sent to the pension fund and, since 1964, B & B had each and every month sent payments to the pension fund not only on behalf of the other employees, but also on behalf of plaintiffs.

In the course of his decision the trial justice referred to the 1958-1961 and 1961-1967 collective bargaining agreements and to the various pension plans. He said that the critical term appeared to be the word "employees" and noted that there was no particular definition of "em-

ployees" in the article governing pension funds in either agreement. However, he pointed out that in both agreements, the article dealing with the pension fund gave the trustees, among other powers, the power to make all decisions regarding the details of establishment and administration of regulations governing eligibility for benefits thereunder. He went on to say that the trustees had exercised that power by defining in article I, sec. 8 of the pension plan adopted in 1958 the term "Covered Employee" as meaning a person who has been or is in covered employment but not any person who is an officer or director of a corporation or a partner or owner of a business organization if such corporation or business is a contributing employer.

He also noted that the 1958 pension plan had been followed in other pension plans and that each of the various plans adopted by the trustees contains similar language defining the term "Covered Employee" and specifically excludes therefrom officers and directors of a corporation or partners or owners of a business organization if such corporation or organization is a contributing employer.

The trial justice treated the question as one of law. While agreeing that the collective bargaining agreements were rather ambiguous as to who is and who is not a "Covered Employee" and that it did not define "Covered Employee" except in the part dealing with the scope of the agreement, he emphasized the fact that the collective bargaining agreements refer to the power of the trustees to establish regulations covering eligibility.

In resolving the question of the meaning of the term "Covered Employee," the trial justice considered not only the collective bargaining agreements, but also the regulations promulgated by the trustees and the definitions included therein. He concluded that the definitions contained in the pension plan as promulgated by the trustees

472

clearly excluded officers of a corporation. He noted that it was undisputed that plaintiffs had at all times pertinent to the resolution of this controversy been officers of B & B. In the circumstances, he held that "* * * the definitions contained in the Pension Plan, notably Section 8 thereof as continued down to the present time, including the documents effective November 1, 1971 * * *" clearly excluded plaintiffs from coverage under the New England Teamsters and Trucking Pension Plan and, therefore, they did not have a right to pension benefits thereunder.

The trial justice also found that, on the record before him, defendants were not estopped from denying benefits to plaintiffs.

On the basis of his findings and conclusion of law, he granted defendants' Rule 41(b)(2) motion and dismissed plaintiffs' complaint with prejudice.

I

The plaintiffs' first contention is that the trial justice erred in granting defendants' motion to dismiss, on the grounds that the trustees had the power to adopt rules and regulations which excluded from the term "Covered Employees" "* * * any person who is an officer or director of a corporation or a partner or owner of a business organization which such corporation or business organization is a Contributing Employer." They state that the authority to create a pension fund for the members of the New England Teamsters Local Unions originated in the 1958-1961 collective bargaining agreement between employers of the trucking industry in New England and various local unions in New England of the International Teamsters Union. Further, they refer to paragraph (a) of article XIX of that agreement which provides that:

"Commencing with the eleventh day of April, 1958, and for the duration of this agreement and any renewals or extensions thereof, the Employer agrees to

make payments to the Teamsters' Freight Pension Fund for each employee covered by this Agreement * * * "

After discussing other portions of article XIX, plaintiffs argue that nowhere in this article are the trustees authorized to limit or reduce or redetermine the employees covered by the collective bargaining agreement. They argue further that it is clear and unambiguous that paragraph (a) of article XIX provides that the employer shall make payments for "each employee covered by this Agreement"; that to determine which employees are covered by this agreement, one need only look to paragraphs (b) and (c) of article I of the agreement, which defines over-the-road employees as well as local employees who perform the functions of driving, hauling, loading, etc., all functions performed by these plaintiffs; and that these plaintiffs are employees who have maintained their membership in the union.

The plaintiffs also discussed collective bargaining agreements and other documents executed after the 1958-1961 agreement in support of their contention that the coverage is to be in accordance with the collective bargaining agreement and not with what the trustees deem it to be. They also argue that the trial justice either overlooked or disregarded certain provisions of the 1970-1973 collective bargaining agreement and the clear language of article I, sec. 2 of the "Agreement and Declaration of Trust."

In brief, plaintiffs' claim is that this case involves a question of coverage, not eligibility; that the collective bargaining agreements covered all employees; that they were employees within the meaning of the agreement and members of the union in good standing; that their employer had paid and the pension fund office had accepted payments on their behalf; and, finally, that under the agreement the trustees did not have the power to exclude them merely because they were officers of the employer

which made the payments. We find no merit in any of plaintiffs' argument and, for reasons that follow, we affirm the order appealed from.

### The 1958-1961 Collective Bargaining Agreement

The resolution of the question raised by this appeal depends primarily upon the intention of the parties as expressed in the pertinent collective bargaining agreements and the documents executed pursuant to those agreements. The collective bargaining agreements provide for payment to the pension fund by the employer in accordance with standards contained in such agreements. The authority to create a pension fund for the members of the New England Teamsters Local Unions originated in the 1958-1961 collective bargaining agreement between employers of the trucking industry in New England and various local unions in New England of the International Teamsters Union. Therefore, we address ourselves to the pertinent portions of that agreement.

Article I set forth the scope of the agreement. Section (a) states in substance that the agreement "* * * shall cover all over-the-road and local operations of the Employer within the jurisdiction of the sixteen Local Unions listed on the title page * * *." Sections (b) and (c) define "Over-the-road employees" and "Local employees" respectively. Article I says nothing about the pension fund. Article XIX created the pension.

Section (a) of article XIX provides that commencing April 11, 1958, and for the duration of the agreement and any renewals or extensions thereof, the employer agreed "* * * to make payments to the Teamsters' Freight Pension Fund for each employee covered by this Agreement, as follows: * * *." The remaining paragraphs of this section provide for the amounts to be paid by the employer.

Section (b) provides that the payments shall be made to the pension fund; that the pension fund shall be estab-

lished under an "Agreement and Declaration of Trust" which shall conform with "Section 302 of the Labor-Management Relations Act of 1947, as amended"; that said "Agreement and Declaration of Trust shall provide, among other things, for the establishment and administration of the Pension Fund by eight (8) Trustees, four (4) of whom shall be Union Trustees and four (4) of whom shall be Employer Trustees"; and that said trustees shall serve without any compensation from the pension fund.

Section (c) names the trustees of the pension fund.

Section (d) provides that the trustees shall use the corpus and income of the pension fund to provide pension and retirement benefits; that they shall have the authority and power "to make all decisions regarding the details of establishment and administration of the Pension Fund and to adopt a Pension Plan and the rules and regulations governing eligibility for benefits thereunder"; and that the pension plan shall conform in all respects to the requirements of Sections 401 and 404 of the Internal Revenue Code of 1954, as amended, so as to enable the employer at all times to treat contributions to the fund as a deduction for income tax purposes.

Section (e) authorizes the trustees, among other things, to determine the location of the fund's administration office and adopt forms and procedures for accounting and remitting of employer payments. It also authorizes them to determine the time and manner of the employer payments and to cause audits of the payroll and wage records of the employer for the purpose of determining the accuracy of contributions to the fund. Section (f) states that the union and the trustees must meet promptly and take all necessary action to have an appropriate Agreement and Declaration of Trust prepared and executed.

### The Agreement and Declaration of Trust

On April 11, 1958, the Agreement and Declaration of Trust provided for in section (f) of article XIX was executed. It has continuously been in effect since that time.

Article I, section 2 defines the term "Employees" as "all persons covered by collective bargaining agreements between the Employers and the Unions."

Article IV defines the powers, duties and obligations of trustees.

Article VI, section 3, states that the trustees "shall have full authority to determine eligibility requirements for benefits and to adopt rules and regulations setting forth same which shall be binding on the employees and their beneficiaries." Section 5, provides for, and requires, the adoption by the trustees of a written plan setting forth the detailed basis on which payment of benefits is to be made pursuant to the trust agreement.

### The 1958 Pension Plan

The basic pension plan was adopted by the trustees on July 30, 1958, pursuant to the provisions of article XIX, sec. (d) of the 1958-1961 collective bargaining agreement and article VI, sec. 5 of the 1958 Agreement and Declaration of Trust. Article I, sec. 8 of the 1958 pension plan defines the term "Covered Employee" as follows:

> "The term 'Covered Employee' shall mean a person who has been or is in Covered Employment but shall not include any person who is an officer or director of a corporation or a partner or owner of a business organization which such corporation or business organization is a Contributing Employer."

The pension plans adopted by the trustees from 1958 through 1971 are in evidence. They consist of booklets which contain general information about the pension plan and the rules and regulations prepared by the trustees. The plans adopted after 1958 used the same definition

until the definition was amended by the trustees on February 8, 1968, by adding to the above definition the following sentence:

> "Employment as a truck driver, as an employee but not as a partner or owner, on a full-time basis shall be considered Covered Employment and an employee in such full-time employment shall be considered a Covered Employee."

Article I, section 8, of the pension plan, which became effective on November 1, 1971, contains both sentences. It now reads as follows:

> "The term 'Covered Employee' shall mean a person who has been or is in Covered Employment but shall not include any person who is an officer or director of a corporation or a partner or owner of a business organization if such corporation or business is a Contributing Employer. Employment as a truck driver, as an employee but not as a partner or owner, on a full-time basis shall be considered Covered Employment and an employee in such full-time employment shall be considered a Covered Employee."

*The 1961-1967 Collective Bargaining Agreement*

The 1958 collective bargaining agreement expired in 1961. A new agreement for the period 1961-1967 was executed in 1961. It was during this period that B & B executed its first contract with the union and that payments were first made for plaintiffs. Insofar as the questions involved in this appeal are concerned, there are no significant changes in the 1961-1967 agreement. The provisions relating to the pension fund appear in article 28 and are essentially the same as those in article XIX of the 1958-1961 agreement.

Although we have found it necessary to discuss the facts in this case at great length, the primary issue is narrow. The plaintiffs contend in substance that all employees covered by the collective bargaining agreements executed in 1958 and 1961 are entitled to the pension and retire-

478

ment benefits provided by those agreements and that the trustees had no power to exclude them merely because they were officers. The defendants, on the contrary, argue that under the pertinent provisions of article XIX of the 1958 agreement and article 28 of the 1961 agreement the trustees are given the authority to determine which of the covered employees are eligible for pension and retirement benefits; that they have exercised that power by defining the term "Covered Employee" in the pension plans executed from 1958 through 1971; that the definitions adopted by the trustees excluded any person who was an officer or director of a corporation or a partner or owner of a business organization if such corporation or business is a contributing employer; and that since plaintiffs were at all times pertinent here officers of B & B, they were clearly excluded from pension fund benefits.

Thus the narrow question is whether the pertinent provisions of articles XIX and 28 evidence an intent on the part of the parties to those agreements to authorize the trustees to determine which of the employees covered by the collective bargaining agreements were eligible for pension and retirement benefits created by articles XIX and 28 of the 1958 and 1961 agreements. The language of those articles is unambiguous and clearly authorizes and empowers the trustees to make this determination. Since the language is clear and unambiguous, we are not called upon to construe or interpret; we must apply the provisions literally. When they are so applied, the conclusion is inescapable that the trustees acted within their power in excluding officers or directors or owners or partners from the pension and retirement benefits set up in articles XIX and 28.

Nor do we find any conflict between article I of the 1958 and 1961 agreements and articles XIX and 28 of those agreements. Article I deals with the "Scope of Agree-

ment." Articles XIX and 28, on the other hand, deal with the pension funds and eligibility for benefits thereunder. Even though plaintiffs were employees within the scope of article I, they were excluded from pension and retirement benefits by virtue of the action of the trustees under the power given to them by the pertinent provisions of articles XIX and 28.

We shall next discuss briefly the 1967-1970 and 1970-1973 collective bargaining agreements.

### The 1967-1970 Collective Bargaining Agreement

The provisions of the 1967-1970 agreement are similar to those in the 1961-1967 agreement, except for a much simpler definition of the terms "Operations Covered" and "Employees Covered" in article I, which sets forth the scope of agreement. No extended discussion of this agreement is necessary.

### The 1970-1973 Collective Bargaining Agreement

The provisions in the 1970-1973 agreement pertaining to "Scope of Agreement" are the same as those in the 1967-1970 agreement. But the provisions governing the pension fund, which are found in article XXX, are different from those in the corresponding paragraphs in the prior collective bargaining agreements. Unlike the previous agreements, there is no language in article XXX of the 1970-1973 agreement expressly authorizing the trustees to establish rules and regulations governing eligibility. Instead section (a) of article XXX now reads as follows:

> "Commencing with the 1st day of July, 1970, and for the duration of the current collective bargaining agreement between Local Union No. 251 and the Employer, and any renewals or extensions thereof, the Employer agrees to make payments to the New England Teamsters and Trucking Industry Pension Fund for each and every employee performing work within the scope of and/or covered by this collective bargain-

ing agreement, whether such employee is a regular, probationary, temporary or casual employee, irrespective of his status as a member or non-member of the Local Union, from the first hour of employment subject to this collective bargaining agreement, as follows * * * *."

The plaintiffs argue that in view of the deletion of the language formerly used and, in view of the language presently used in section (a), it is clear that their entitlement to pension benefits is conditioned only upon their performing work within the scope of the agreement. There might be some merit to plaintiffs' argument were it not for section (b) of article XXX which reads as follows:

"The Employer agrees to and has executed a copy of the New England Teamsters and Trucking Industry Pension Fund Agreement and Declaration of Trust dated April 11, 1958 and accepts such Agreement and Declaration of Trust, as amended, and ratifies the selection of the Employer Trustees now or hereafter serving as such, and all action heretofore or hereafter taken by them within the scope of their authority under such Agreement and Declaration of Trust."

As shown above, the Agreement and Declaration of Trust executed on April 11, 1958 was prepared and adopted pursuant to the authority granted to the trustees in the 1958-1961 collective bargaining agreement. As we have stated above, article VI, section 3 of the Agreement and Declaration of Trust expressly provides that

"The Trustees shall have full authority to determine eligibility requirements for benefits and to adopt rules and regulations setting forth same which shall be binding on the employees and their beneficiaries."

This is the same language used in all prior collective bargaining agreements. In view of the provisions in section (b) of article XXX, it is clear that the trustees have the same authority under the 1970-1973 agreement as they

had by virtue of the express language in the prior agreements.

We find no merit to plaintiffs' argument that the trial justice overlooked or disregarded the language of article I, section 2, of the Agreement and Declaration of Trust or any of the provisions of the 1970-1973 agreement. It is clear that he was relying on the definition in the pension plan which became effective on November 1, 1971.

## II

There remains the question of whether the trial justice erred in finding that defendants were not estopped from refusing to process the applications of plaintiffs. The facts on which plaintiffs base their claim of estoppel have been fully discussed above and therefore require no repetition here other than to say that they base their claim of estoppel primarily on the relationship that existed between them on the one hand, and Local 251 and the pension fund people, on the other.

The trial justice concluded that the evidence disclosed no estoppel in pais and no promissory estoppel on the part of either Local 251 or the trustees. He gave his reasons for so finding. We believe they are valid and that his conclusion is correct. There is no evidence of any conduct, either affirmative or negative, which is sufficient to support a finding of estoppel, either in pais or promissory, against any defendant. The record indicates that payments for plaintiffs started in 1964, that the question of eligibility arose in 1967, that a difference of opinion existed from then on as to plaintiffs' eligibility, that plaintiffs attempted to show they were eligible and the trustees attempted to show otherwise, and that the question was never resolved. As the trial justice pointed out in his decision, the attempt to resolve this conflict was not followed through and this, he said, was no more the fault of

482

the manager of the pension plan than it was the fault of plaintiffs.

In the circumstances the fact that B & B kept making the payments and the pension office kept accepting them is not sufficient to give rise to an estoppel. We have examined the cases cited by the plaintiffs in support of their claim of estoppel. They are not apposite here and therefore require no discussion.

For the reasons stated the appeal of the plaintiffs is denied and dismissed, the order appealed from is affirmed, and the case is remanded to the Superior Court for further proceedings.

Mr. Chief Justice Roberts did not participate.

*Abedon, Michaelson, Stanzler & Biener, Milton Stanzler,* for plaintiffs.

*Roberts & Willey Incorporated, Dennis J. Roberts, II,* for defendants.