James J. REIHERZER,
Plaintiff-Appellee,

v.

Daniel J. SHANNON, and Central States,
Southeast and Southwest Areas Pension
Fund, Defendants-Appellants.

No. 77–1911.

United States Court of Appeals,
Seventh Circuit.

Argued March 3, 1978.

Decided Aug. 11, 1978.

Alan M. Levy, Milwaukee, Wis., for defendants-appellants.

Arnold P. Anderson, Eau Claire, Wis., for plaintiff-appellee.

Before PELL and WOOD, Circuit Judges, and FLAUM, District Judge.*

FLAUM, District Judge.

This appeal concerns the rights of plaintiff, James J. Reiherzer, to a disability pension pursuant to the provisions of the International Brotherhood of Teamsters' Central States, Southeast and Southwest Areas Pension Plan (Plan). In his amended complaint Reiherzer alleged that trustees of the Plan "wrongfully refused to pay . . . disability benefits" to him even though he met all of the Plan's eligibility requirements. Furthermore, Reiherzer alleged that the trustees, by their actions and statements, were estopped to deny him a disability pension. After a bench trial, the district court entered judgment for plaintiff and ordered defendants to pay plaintiff a disability pension of $100 per month for life, retroactive to October 1, 1968. For reasons other than those expressed by the district court,[1] we affirm.

---

* The Honorable Joel M. Flaum, District Judge of the United States District Court for the Northern District of Illinois, is sitting by designation.

1. In ruling in Reiherzer's behalf, the district court found that the Plan and Shannon were estopped to deny plaintiff's right to a disability pension. We have serious doubts, however, as to the advisability of employing estoppel principles in determining whether an individual will receive benefits from an employer-funded union pension plan. The vast majority of courts considering this issue have rejected the use of estoppel principles in cases of this sort. *Thurber v. Western Conference of Teamsters' Pension Plan*, 542 F.2d 1106, 1108–09 (9th Cir. 1976) (per curiam); *Phillips v. Kennedy*, 542 F.2d 52, 55 n.8 (8th Cir. 1976) (dictum); *Moglia v. Geoghegan*, 403 F.2d 110, 117–18 (2d Cir. 1968), *cert. denied*, 394 U.S. 919, 89 S.Ct. 1193, 22 L.Ed.2d 453 (1969); *Chamberlain v. Bakery Confectionary Union & Industry International Pension Fund*, No. C–76–784–CBR (N.D.Cal. October 3, 1977); *Hodgens v. Central States, Southeast & Southwest Areas Pension Fund*, 94 L.R.R.M. 2507 (E.D.Mich.1976); *Melang v. I. B. E. W. Pacific Coast Pension Fund*, 93 L.R.R.M. 2389 (W.D.Wash.1976); *Dohrer v. Wakeman*, 14 Wash.App. 157, 539 P.2d 91 (1975). *But see Scheuer v. Central States Pension Fund*, 358 F.Supp. 1332 (E.D.Wis.1973). Under the provisions of Labor-Management Relations Act, § 302(c)(5)(B), 29 U.S.C. § 186(c)(5)(B), employer funding of union pension funds is legal only if eligibility provisions are set forth "in a *written* agreement with the employer." *Id.* (emphasis supplied). To allow the conduct or statements of persons entrusted with administering an employer-funded union pension fund to alter pension eligibility could seriously undermine the "written agreement" requirement of section 302(c)(5)(B). *Thurber v. Western Conference of Teamsters Pension Plan*, 542 F.2d at 1109.

The relevant facts are undisputed.[2] In 1942 Reiherzer joined Local 200 of the International Brotherhood of Teamsters. After working as a truck driver at Barry Transfer Co. from November, 1948 to January, 1949, Reiherzer became employed with A. G. Cartage, Inc. (Cartage). Until his retirement in 1968 due to his total disability resulting from arthritis, Reiherzer's only employment was with Cartage.

From 1949 to 1951 Reiherzer was employed at Cartage solely as a teamster truck driver. In 1951, however, Reiherzer purchased the controlling share of the stock of Cartage and became the company's president and chief executive officer.[3] By 1955 plaintiff owned 90 percent of the stock in Cartage. Although he had become Cartage's president, Reiherzer's day-to-day activities were not changed. Over 90 percent of his on-the-job duties consisted of driving truck or working on the loading dock, while the remainder of his work day was spent doing miscellaneous office work. Reiherzer did, however, assume the power to hire and fire employees of Cartage and to conduct Cartage's labor negotiations. These powers were exercised by Reiherzer on various occasions and it was he who signed the collective bargaining agreements on behalf of Cartage with the local union. Furthermore, Reiherzer was not paid on an hourly basis as were the rest of the teamsters working at Cartage, but rather was paid a salary equal to the pay of the average truck driver plus his share of the profits earned by Cartage for the year.

Although Cartage had only three shareholders, defendants do not contend that it was a "sham" corporation. Thus, it was Cartage and not Reiherzer which owned the operating authority for the business, and Reiherzer held none of the assets used in the business in his own name. The proper corporate forms were maintained by Cartage and there is no evidence to suggest that corporate funds were commingled with Reiherzer's personal funds. On the advice of counsel in 1959, Cartage began filing its federal income tax returns as a Subchapter S, small business corporation pursuant to 26 U.S.C. §§ 1371 *et seq.,* and Reiherzer stopped deducting Social Security taxes from his monthly salary declaring himself "self-employed." [4]

In 1955, pursuant to a collective bargaining agreement, Cartage began making payments to the Plan on behalf of its teamster employees. From 1955 to 1968, each month Cartage submitted a check to the Plan along with the names of those persons for whom contributions were being made. Reiherzer's name appeared on the lists submitted to the Plan, and as president of Cartage he signed the accompanying contribution checks. During this time no official of the Plan notified Cartage that Reiherzer was ineligible to participate in the pension program. In total, Cartage contributed over $3,000 to the Plan on Reiherzer's behalf.

Although Reiherzer retired in 1968 and sold his stock in Cartage, it was not until April 1974 that he filed a formal application for a disability pension with the Plan.[5] At that time, the 1973 edition of the Plan was in effect, with the provisions relevant to plaintiff's disability pension application identical to those provisions existing in the 1967 edition of the Plan in effect at the time of plaintiff's retirement. Article III,

---

2. Although the district court, in its oral opinion in this case, did not make explicit fact findings on the evidence, none of the parties seriously disputed the statement of facts presented at trial by the other parties.

3. In 1951, Cartage stock was held by three individuals: plaintiff, his wife, and Leo Glick.

4. Accordingly, from 1959 until 1968 the Social Security Administration's records showed no withholding taxes paid on behalf of Reiherzer by Cartage.

5. Reiherzer testified at trial that in 1968 he went to the local union's office to inquire as to his eligibility for a disability pension and that someone at the office informed him that he had to be 54 years old to apply for a pension. The district court made no finding as to whether this incident did in fact take place. But, even if the incident did occur, it is clear that at that time, in 1968, an application for pension benefits was not submitted by Reiherzer to the Plan.

Section 4B of the Plan set forth the eligibility requirements for a disability pension providing:

B. Conditions for Qualifications for Disability Pension. An employee (a) who becomes totally and permanently disabled . . . prior to his 62nd birthday after

(1) completion of fifteen years of continuous service in the industry; and

(2) completion of three years of continuous service under a collective bargaining agreement for any employee who became a member of a Plan prior to July 1, 1967 . . .; and

(3) payment of eighty weeks contributions to the Trust Fund by the employer on his behalf for any employee who became a member of the Plan prior to July 1, 1967 . . .; and

(4) contributions by his last employer on his behalf under a collective bargaining agreement providing for contributions at a rate of not less than $7.00 per week for two years and $8.00 per week thereafter . . . .[6]

On November 14, 1974 defendants rejected plaintiff's application. Defendants stated that from 1959 to 1968 plaintiff was "self-employed" with Cartage and was therefore out of "covered employment."[7] By being out of "covered employment" for five years after 1955, defendants stated that plaintiff had suffered a "break in service"[8] under the Plan and accordingly did not have the requisite 15 years continuous service in the industry.[9] This was the only reason given Reiherzer for the denial of his pension application, the defendants in no way suggesting that Reiherzer had failed to meet the remaining eligibility requirements.

## I. Jurisdiction

Initially this action was brought by plaintiff in state court and it was subsequently removed to the district court pursuant to 28 U.S.C. § 1441(b). For obvious reasons,[10] the parties have not challenged the subject matter jurisdiction of this court. Nevertheless, this court, of course, must assure itself that such jurisdiction exists in this case.

Defendants' removal petition raised three jurisdictional bases: the Labor-Management Relations Act, §§ 301 and 302, 29 U.S.C. §§ 185, 186 and the Employee Retirement Income Security Act of 1974 (ERISA) § 502, 29 U.S.C. § 1132. For the reasons stated below, we find subject matter jurisdiction exists over Reiherzer's claim of wrongful rejection of his pension application pursuant to section 502 of ERISA.

---

6. Of course, permanent disability was required for eligibility. Plan Article III, Section 4B(b). In this case there is no dispute concerning plaintiff's disability.

7. "Covered employment" under the Plan was defined as:

(1) For any employee who became a member of the Plan prior to May 1, 1971

(a) Employment within a classification of work and in an industry which was at the time of such employment normally covered by Teamster contracts in the local metropolitan area; and/or

(b) Employment in the same classification of work in which employed after the Effective Date under a Teamster contract and on which pension contributions have been made on behalf of the employee; and/or

(c) Employment requiring the usual Teamster skills in traditional Teamster industries at the time of such employment . . . .

8. "Break in Service" meant

if an employee is not in covered employment for a period of five consecutive years between February 1, 1955 and April 1, 1969

. . . . .

Plan, Article I, Section 13.

9. Article I, Section 14 defined "Continuous Service in the Industry" as

accumulated years of employment prior to retirement calculated from the employee's last employment or reemployment date following the last break in service.

*Any service in the industry as an employer as a member of a partnership or self-employed shall not be included as credible service for purposes of this Plan.*
(Emphasis in original).

10. Since defendants removed the case to federal court it would be anomalous for them to challenge this court's jurisdiction. Moreover, since plaintiff has prevailed in the trial court, one would not expect him to raise jurisdictional problems.

■ This court has previously ruled that section 302 of the Labor-Management Relations Act does not confer subject matter jurisdiction on the federal courts over claims concerning the incorrect application of pension eligibility standards by the trustees of a pension plan. *Johnson v. Botica*, 537 F.2d 930 (7th Cir. 1976). Section 302 provides that employer payments to union officials are illegal except in certain limited circumstances. 29 U.S.C. § 186(a). One of these circumstances is when the employer payments are made

> to a trust fund established by [a union] for the sole and exclusive benefit of the employees of such employer . . . .

*Id.* § 186(c)(5). Section 302(e) provides that the provisions of section 302(c) may be enforced by way of civil actions in the federal district courts. In *Johnson*, referring to section 302, the court stated:

> The courts have consistently recognized that Congress did not intend to burden the courts with claims as to whether a pension benefit was correctly or incorrectly denied . . . .

537 F.2d at 933. Rather, section 302(e) conferred jurisdiction on the federal courts over claims by putative pension beneficiaries alleging that the "pension plan is arbitrary, capricious, or in some way contrary to the exclusive benefit of employees." *Id.* This construction was consistent with those decisions holding that section 302(e) conferred subject matter jurisdiction on the federal courts over claims by pension beneficiaries alleging that the pension plans, themselves, contained "structural defects." *See, e. g., Lugo v. Employees Retirement Fund of Illumination Products Industry*, 529 F.2d 251 (2d Cir.), *cert. denied*, 429 U.S. 826, 97 S.Ct. 81, 50 L.Ed.2d 88 (1976); *Bowers v. Moreno*, 520 F.2d 843 (1st Cir. 1975); *Alvares v. Erickson*, 514 F.2d 156 (9th Cir.), *cert. denied*, 423 U.S. 874, 96 S.Ct. 143, 46 L.Ed.2d 106 (1975). Since Reiherzer in his

amended complaint does not allege that the Plan contains an illegal eligibility requirement under section 302(c)(5) which makes the Plan not for the exclusive benefit of the employees in the teamster industry, section 302(e) cannot be a basis upon which this court can consider Reiherzer's claim that his pension was wrongfully denied.

However, whether this court has jurisdiction over Reiherzer's claim pursuant to section 301 raises more difficult questions, questions this court has yet to consider.[11] Section 301(a) provides:

> (a) Suits for violation[s] of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). The courts which have considered the question of whether this section provides jurisdiction in cases of this sort have divided on its resolution. *See Cuff v. Gleason*, 515 F.2d 127 (2d Cir. 1975); *Beam v. International Organ. of Masters, Mates, & Pilots*, 511 F.2d 975 (2d Cir. 1975); *Miller v. Davis*, 507 F.2d 308 (6th Cir. 1974); *Finn v. Chicago Newspaper Publishers' Assoc.-Drivers Union Pension Plan*, 432 F.Supp. 1178 (N.D.Ill.1977); *Meehan v. Laborers Pension Fund*, 418 F.Supp. 29 (N.D. Ill.1976), holding no jurisdiction under section 301. *Contra, Rehmar v. Smith*, 555 F.2d 1362 (9th Cir. 1977); *Phillips v. Kennedy*, 542 F.2d 52 (8th Cir. 1976); *Leonardis v. Local 282 Pension Trust Fund*, 391 F.Supp. 554 (E.D.N.Y.1975).

In *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 923, 1 L.Ed.2d 972 (1957), the Supreme Court held that section 301 created not only a jurisdictional grant for federal courts to resolve disputes arising out of violations of contracts between em-

---

11. This court cannot agree with the district court in *Finn v. Chicago Newspaper Publishers' Assoc.-Drivers Union Pension Plan*, 432 F.Supp. 1178 (N.D.Ill.1977), that because *Johnson* held section 302(e) did not confer jurisdiction on the federal courts on claims challenging mere denials of pension benefits, section 301 likewise cannot confer such jurisdiction. *Id.* at 1179. While it may be true that section 301 is not such a jurisdictional grant, such a conclusion need not follow from the rejection of section 302 as a jurisdictional authorization.

ployers and labor organizations, but it also authorized federal courts to develop a common law for resolving such disputes consistent with federal labor policies. *Id.* at 456, 77 S.Ct. 923.[12] Moreover, in *Smith v. Evening News Ass'n*, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962), the Court stated that "individuals" could rely on section 301 as a jurisdictional and substantive law provision to vindicate their "personal" rights under a collective bargaining agreement. The courts holding that section 301 allows federal courts to hear claims concerning the denial of pension benefits due to an improper interpretation of the pension plan state that such pension plans are ordinarily established by a collective bargaining agreement and therefore are a part of a contract between an employer and a labor organization. *See, e. g., Rehmar v. Smith*, 555 F.2d 1362, 1366–67 (9th Cir. 1977). The courts holding to the contrary contend that in a simple dispute over pension benefits the collective bargaining agreement is not raised in the complaint [13] and the only dispute is between the pension fund's trustees and the putative beneficiary. *See, e. g., Beam v. International Organ. of Masters, Mates, & Pilots*, 511 F.2d 975, 978 (2d Cir. 1975). In such circumstances, it is contended, Congress did not intend to create a body of federal common law controlling how the trustees of a pension plan should operate that plan on a day-to-day basis. *Id.*

■ Whichever of these positions is correct concerning the availability of a federal remedy for the wrongful denial of a pension pursuant to section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185 Congress in section 502(a)(1)(B) of ERISA has clarified the law in this area and has opted to enact the position granting federal courts jurisdiction in cases of this sort. Section 502(a)(1)(B) provides:

> (a) A civil action may be brought—
>> (1) by a participant or beneficiary—
>> (B) to recover benefits due to him under the terms of his [pension] plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . .

29 U.S.C. § 1132(a)(1)(B). Section 502(e)(1) states that both federal and state courts have jurisdiction over cases brought pursuant to section 502(a)(1)(B). 29 U.S.C. § 1132(e)(1). Thus, as the legislative history points out:

> [W]ith respect to suits to enforce benefit rights under the plan or *to recover benefits under the plan which do not involve application of the title I provisions,* they may be brought not only in U.S. district courts but also in State courts of competent jurisdiction. All such actions in Federal or State courts are to be regarded as arising under the laws of the United States *in similar fashion to those brought under section 301 of the Labor-Management Relations Act of 1947.*

H.R.Conf.Rep.No.73–1280, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Admin.News, pp. 5038, 5107 (emphasis supplied). Accordingly, federal jurisdiction exists over, and federal common law will govern, actions under section 502 claiming that pension trustees have improperly denied pension benefits to an individual in violation of the terms of the pension plan.[14] *See*

12. In so holding, the Court rejected Justice Frankfurter's position in *Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp.*, 348 U.S. 437, 75 S.Ct. 489, 99 L.Ed. 510 (1955), that section 301 did not create a "federal common law" applicable to violations of collective bargaining agreements. Moreover, in rejecting Justice Frankfurter's position, the Court avoided the constitutional problem he raised concerning Congress' power to create jurisdiction in federal courts over matters controlled solely by state law absent diversity of citizenship between the parties. *Id.* at 449, 75 S.Ct. 489.

13. In the case at bar, Reiherzer does not contend that the Plan administered by defendants violates either the collective bargaining agreement or the trust agreement establishing the Plan. As such, this case is distinguishable from *Alvares v. Erickson*, 514 F.2d 156, 161 (9th Cir.), *cert. denied*, 423 U.S. 874, 96 S.Ct. 143, 46 L.Ed.2d 106 (1975).

14. In *Martin v. Bankers Trust Co.*, 565 F.2d 1276 (4th Cir. 1977), the court held that the plaintiff could not maintain an action pursuant to section 502 of ERISA to recover pension benefits where she did not rely on the substan-

*Cuff v. Gleason,* 515 F.2d 127, 129 (2d Cir. 1975). *Cf. Local Union No. 657 v. Sidell,* 552 F.2d 1250 (7th Cir.), *cert. denied,* 434 U.S. 862, 98 S.Ct. 190, 54 L.Ed.2d 135 (1977).

Since it is clear that Reiherzer's claim falls within the scope of section 502, the only remaining question is whether section 502 applies to this case. Section 502 does not have an explicit effective date, unlike other provisions of ERISA,[15] and accordingly becomes effective on the date of its enactment, September 2, 1974. *Morgan v. Laborers Pension Trust Fund for N. Cal.,* 433 F.Supp. 518 (N.D.Cal.1977).[16] Moreover, this court agrees with *Morgan* that a cause of action arises under section 502 at the time the trustees of the pension plan deny an application for benefits. *Id.* at 525. *Cf. Winer v. Edison Bros. Stores Pension Plan,* 447 F.Supp. 836 (E.D.Mo.1978). *But see Knauss v. Gorman,* 433 F.Supp. 1040, 1042 (W.D.Pa.1977). It is at that time that the courts must apply the federal common law standards applicable to trustees of union pension plans. In the case at bar, Reiherzer's application for disability benefits was denied on November 14, 1974,[17] and this court has jurisdiction to hear his claim that defendants wrongfully denied him his disability pension.

## II. The Merits

As stated previously, defendants denied Reiherzer a disability pension because the trustees of the Plan determined that he had been "self-employed" from 1959 to 1968, and therefore suffered a "break in service" which precluded him from meeting the 15 year "continuous service in the industry" requirement. In response, Reiherzer argues that he was not self-employed within the meaning of the Plan because he was, in fact, an employee of Cartage, a valid and distinct corporate entity. This court, in deciding this case, under federal common law principles, of course, cannot replace its judgment for the considered judgment of the Plan's trustees. Rather, we are required to uphold the trustees' decision unless it was arbitrary and capricious in light of the language of the Plan. *Phillips v. Kennedy,* 542 F.2d 52, 54 (8th Cir. 1976); *Roark v. Lewis,* 130 U.S.App.D.C. 360, 361, 401 F.2d 425, 426 (1968).

This court must agree with defendants that the Plan, on its face, excludes time as "self-employed" from being considered for purposes of calculating "continuous service in the industry" under Article I, Section 14A of the Plan.[18] Moreover, we must agree that section 302(c)(5) of the Labor-Management Relations Act, 29 U.S.C. § 186(c)(5), would make it illegal for an "employer" to contribute money to a union pension fund which paid benefits to "self-employed" individuals, since such pension plans must be for the exclusive benefit of "employees." *See, e. g., Melang v. I.B. E.W. Pacific Coast Pension Fund,* 93 L.R. R.M. 2389, 2390 (W.D.Wash.1976); *Dohrer v. Wakeman,* 14 Wash.App. 157, 539 P.2d 91 (1975). But, nowhere in the Plan is the term "self-employed" defined,[19] and we find that the trustees acted arbitrarily in deciding that because Reiherzer was a shareholder and corporate officer of Cartage, and paid his federal taxes on a self-employed

---

tive provisions of ERISA as the basis of her cause of action. The court held that to allow such actions could create constitutional problems delineated in *Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp.,* 348 U.S. 437, 25 S.Ct. 489, 99 L.Ed. 510 (1955). *See* note 12 *supra.* Based upon the legislative history discussed in the text, it is clear that Congress intended federal common law to control in section 502 actions and the "constitutional question" troubling the *Martin* court does not exist.

**15.** *See, e. g.,* 29 U.S.C. §§ 1003, 1031, 1051, 1055(i) and 1061.

**16.** Although *Alvares v. Erickson,* 514 F.2d 156 (9th Cir.), *cert. denied,* 423 U.S. 874, 96 S.Ct. 143, 46 L.Ed.2d 106 (1975), in dicta suggests that section 502 became effective on January 1, 1975, there is nothing in the statute to justify such a holding.

**17.** *See* note 5 *supra.*

**18.** *See* note 9 *supra.*

**19.** Article I, Section 5 of the Plan defines "employer" as, "any association or individual employer . . . ."

basis, that he was "self-employed" under the terms of the Plan for purposes of the "continuous service in the industry" requirement.

First, nothing in the Plan expressly states that an employee of a corporation working in the teamster industry may not include the time he works for that corporation as "continued service in the industry" if he is a shareholder of the corporation. Likewise, employment as a corporate office holder at the same time as an individual is doing classic teamster work, driving truck, is not expressly excluded from the continuous employment definition.[20] Moreover, the Plan does not state that the trustees are to consider how an individual pays his federal taxes in determining if he is "self-employed." In light of section 302(c)(5), and its requirement that employer-funded union pension plans must have written eligibility requirements, the absence of specific exclusions for shareholders or corporate officers of the corporate "employer" is strong indication that the trustees arbitrarily interpreted the Plan in this case.

Second, the trustees' decision, itself, was inherently inconsistent. Thus, the trustees stated that for purposes of the "continuous service in the industry" eligibility requirement, Reiherzer was "self-employed" from 1959 to 1968. However, it is clear from the facts that nothing occurred in 1959, in relation to the nature of Reiherzer's employment, which would have justified the trustees in determining that Reiherzer was "self-employed." Thus, from 1951 on Reiherzer was the president and principal shareholder of Cartage and the trustees' decision indicates that from 1951 to 1959 his employment with Cartage was not "self-employed" under the Plan. Several courts,

not surprisingly, have held that such inherently inconsistent decisions as to an individual's eligibility under a pension plan indicate arbitrary action by the plan's trustees. *Maness v. Williams,* 513 F.2d 1264, 1267 (8th Cir. 1975); *Becker v. Pension Fund,* 59 Mich.App. 684, 229 N.W.2d 888 (1975). Furthermore, the fact that Cartage in 1959 filed for income tax purposes as a Subchapter X corporation is irrelevant to Reiherzer's status with that corporation as an employee. Electing to file as a Subchapter S corporation does not make Cartage anything less than a valid corporation whose shareholder-officers are its employees. *Cf. Byrne v. C. I. R.,* 361 F.2d 939 (7th Cir. 1966).

Third, at the trial of this cause, no evidence was presented to show that the trustees have consistently maintained that shareholders or officers of corporations which make contributions to the Plan are not working in the industry for purposes of Article III, section 4B(a)(1) of the Plan. The defendants' only witness, Edward Murtha, the Administrator of Pension Benefits for the Plan, merely testified that self-employed work in the industry was not considered covered employment for determining an individual's continuous service in the industry.[21] Nowhere in his testimony does he state that employee-shareholders or corporate officers who work in the industry do not get credit for service in the industry.[22] Thus, the case is distinguishable from *Rehmar v. Smith,* 555 F.2d 1362 (9th Cir. 1976), in which it was demonstrated that in defining the word "spouse" under a pension plan, the trustees had never interpreted the word to include a common law wife. *Id.* at 1372.

In fact, the case of *Becker v. Pension Fund,* 59 Mich.App. 684, 229 N.W.2d 888

---

**20.** Thus, cases like *Blinkhorn v. McCarthy,* 113 R.I. 465, 322 A.2d 43 (1974), cited by defendants, are distinguishable since the pension plan in *Blinkhorn* expressly excluded corporate officials from "covered employee" status. *Id.* 322 A.2d at 49.

**21.** This particular testimony was relevant because prior to 1964, the Plan did not expressly exclude time as "self-employed" from covered employment.

**22.** In fact, on cross-examination, Mr. Murtha indicated that the questionnaire submitted to Reiherzer for information concerning his employment status was ordinarily used to determine if an individual was an owner/driver of a truck and therefore self-employed. None of the questions on the form related to stock ownership or to whether the individual was an officer of a corporation as well as a teamster driver.

(1975), indicates that the trustees have taken the position that an individual who incorporates his business is still an employee of the business for purposes of the continuous service in the industry requirement. In *Becker,* the plaintiff Frank Becker had for years worked in the teamster industry. In 1947 he formed the Frank Becker Towing Co. which he incorporated in 1955. The very pension plan at issue in this case, the Central States, Southeast & Southwest Areas Pension Plan, denied plaintiff a pension but credited him with service in the industry for the years *after* the incorporation of his business. As the court recognized

> It is difficult . . . to determine how the [Plan] admittedly treated the plaintiff as an employee in the operation of the Frank Becker Towing Company, subsequent to the incorporation of this company, while at the same time it claimed that prior to the incorporation, he was self-employed.

229 N.W.2d at 891. This ability of the trustees to blow hot or cold on the definition of "self-employed" under the Plan demonstrates the arbitrariness of their denial of Reiherzer's pension on the ground that he was "self-employed."

Finally, on this issue, defendants contend that to allow a shareholder/corporate office holder to accrue "continuous service in the industry" under the Plan would jeopardize the tax-exempt status of the Plan pursuant to 26 U.S.C. §§ 401 *et seq.* Pursuant to the Trust Agreement establishing the pension plan the trustees are forbidden from taking any action which would jeopardize the tax-exempt status of the Plan. Trust Agreement Article VII, Section 1.

In support of this contention defendants cite this court to Rev.Rul. 69–421. Defend-

ants point to the language in Rev.Rul. 69–421(j), which states, "A qualified plan must benefit employees or their beneficiaries exclusively," to demonstrate that payments to shareholders or corporate officeholders, not being "employees," would disqualify the Plan from tax-exempt status. However, the remainder of the revenue ruling states that, "Stockholders who are bona fide employees of a corporation may participate in the corporation's plan to the same extent as other employees." Rev.Rul. 69–421(j)(3). And Rev.Rul. 69–421(j)(1) merely excludes sole proprietors and partners from participating in a qualified plan and does not exclude corporate officers who may be employees of a valid corporation from participating in a qualified plan.

Accordingly, defendants having presented no evidence to suggest that A. G. Cartage, Inc. is a sham corporation, the trustees of the Plan acted arbitrarily in labeling Reiherzer "self-employed" for purposes of his disability pension eligibility. *Cf. NLRB v. Caravelle Wd. Prod., Inc.,* 466 F.2d 675 (7th Cir. 1972).[23]

However, the defendants have raised another ground which they contend makes Reiherzer ineligible under the Plan even if he cannot be considered "self-employed." Thus, defendants argue that because Reiherzer was clearly a "supervisor" at Cartage,[24] he suffered a "break in service" under the Plan for the period of time he was a supervisor, and therefore he does not have the requisite 15 years continued service in the industry.

Defendants rely on two provisions of the Plan not previously cited; Article II, Section 1 of the Plan which provides: "every employee, as defined herein, shall be a

---

**23.** In *Caravelle,* this court held that the NLRB had acted arbitrarily in excluding a relative of a controlling shareholder/officer of a corporation from being considered an "employee" of the corporation pursuant to the Labor-Management Relations Act § 2(3), 29 U.S.C. § 152(3), which provides:

> The term "employee" shall include any employee . . . but shall not include . . . any individual employed by his parent or spouse.

*Id.* Thus, the relative had to be considered an "employee" of the corporation unless the business was in fact a sole proprietorship. A fortiori, the court was stating that the shareholder/officer was not the employer of his or her relative.

**24.** The district court found that Reiherzer was "at least a supervisor" and this finding is not clearly erroneous.

member of the Pension Plan;" and Article I, Section 7(a) which defines an "employee" as:

> (a) a person—*other than a person employed in a supervisory capacity*—who has been on the payroll of an employer for thirty (30) days or more and is employed under the terms and conditions of a collective bargaining agreement entered into between an employer and a union and on whose behalf payments are made to the Trust Fund by the employer
> . . . .

(Emphasis supplied). Defendants argue that the exclusion of supervisors from the definition of "employees" incorporated into the Plan in 1967 was to clarify the fact that supervisory personnel were not part of the collective bargaining unit, and thus not eligible to participate in the pension program.[25] Accordingly, defendants contend, since Reiherzer was a supervisor from at least 1951 on, he was not a member of the collective bargaining agreement and he suffered a "break in service" under Article I, Section 13 of the Plan.

We cannot agree that this new contention put forth by defendants, not relied on by the trustees in ruling on Reiherzer's application, bars plaintiff's eligibility for a disability pension. as stated previously, the Plan requires 15 years continuous service in the teamster industry by an individual in order to achieve eligibility for a disability pension. However, there is nothing in the Plan that requires that these 15 years be under the terms of a collective bargaining agreement. Rather, there is a *separate* requirement that an individual to be eligible for a pension must have *3 years* of continuous service "under a collective bargaining agreement".[26] *Maness v. Williams*, 513 F.2d 1264, 1267 (8th Cir. 1975) (interpreting the same plan in issue in this case). A "break in service" only occurs when an indi-

vidual is out of "covered employment" for five consecutive years between 1955 and 1969, and "covered employment" includes, "Employment requiring the usual Teamster skills in traditional Teamster industries . . . ." Plan, Article I, Section 11A(1)(c). While it is true that Reiherzer was a supervisor, there is no dispute that at all relevant times he was a union member doing work in an industry (driving truck) requiring "the usual Teamster skills." Moreover, although in 1964 the trustees modified the Plan to exclude service while "self-employed" from being counted as "continuous service in the industry," no such explicit exclusion was made for time spent by an employee in a supervisory capacity.[27]

Nevertheless, although we find that the Plan does not exclude Reiherzer's time employed as a supervisor from being counted in calculating his 15 years "continuous service in the industry," defendants still contend that under the Labor-Management Relations Act § 302(c)(5) it would be illegal for them to pay pension benefits to a supervisor. This agreement is premised on the definition of "employee" found in the Act which states,

> The term "employee" shall include any employee . . . but shall not include . . . any individual employed as a supervisor.

Labor-Management Relations Act § 2(3), 29 U.S.C. § 152(3). Thus, since under section 302(c)(5), as previously noted, an employer-funded union pension plan must be for the "benefit of employees," payments cannot be made to supervisors who are not, by definition, employees.

Although this syllogism has facial appeal, it is completely without merit. First, it should be noted that until 1947, the definition of "employee" in section 2(3) did not

---

**25.** Trial Transcript at 75 (testimony of Mr. Murtha).

**26.** Article III, Section 4B(a)(2) requires 3 years under a collective bargaining agreement for individuals who are members of the Plan prior to 1967.

**27.** This lack of an explicit exclusion for supervisors for all purposes under the Plan distinguishes the case at bar from *Miracle v. United Mine Workers of America Welfare & Retirement Fund of 1950*, 373 F.Supp. 603 (D.D.C. 1974), which involved a plan having such an express exclusion of supervisors. *See also Warren v. Davis*, 95 L.R.R.M. 2025 (E.D.Okla. 1977).

exclude supervisors and the exclusion was only added to section 2(3) in 1947 in response to the Supreme Court decision in *Packard Co. v. NLRB*, 330 U.S. 485, 67 S.Ct. 789, 91 L.Ed. 1040 (1947), which held that supervisory personnel could organize and *force* employers under the Act to collectively bargain with their union. *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 279–84, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974). Thus, the Supreme Court has recognized that the use of the term "employee" in section 302 has a broader scope than as defined by section 2(3). In *Allied Chemical & Alkali Workers of America, Local Union No. 1 v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971), the Court held that while retired personnel were not "employees" under section 2(3) and their interests could not be made the subject of mandatory collective bargaining, they were still "employees" for purposes of section 302 and, of course, could participate in an employer-funded union pension program. *Id.* at 169–71, 92 S.Ct. 383. *See Blassie v. Kroger Co.*, 345 F.2d 58, 73 (8th Cir. 1965); *Sanchez v. Trustees of Pension Plan*, 353 So.2d 327, 329 (La.App.1977). *But see Warren v. Davis*, 95 L.R.R.M. 2029 (E.D.Okla. 1977).[28]

Second, to accept defendants' contention would lead to the absurd result that if an individual employee met all the eligibility requirements of his union's pension plan and then became a supervisor he would not be able to obtain his pension. Defendants have cited this court no authority to suggest that section 302(c)(5) requires the forfeiture of a pension upon obtaining a promotion.[29]

Accordingly, this court finds that defendants arbitrarily denied Reiherzer his disability pension and the judgment of the district court is hereby

AFFIRMED.

---

[28]. In fact, while not addressing the point before this court, the Supreme Court has taken note of union pension plans which included supervisors. *Cf. Florida Power & Light Co. v. International Brotherhood of Electrical Workers, Local 641*, 417 U.S. 790, 793, 94 S.Ct. 2737, 41 L.Ed.2d 477 (1974).

---

[29]. Defendants' argument that if supervisors are given benefits under the Plan their tax-exemption under 26 U.S.C. § 401 will be lost is likewise without merit. *Blassie v. Kroger Co.*, 345 F.2d 58, 74 (8th Cir. 1965).